IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERCA, | ) | CASE NO. 1:19-CR-00283 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| vs. | ) | |
| | ) | |
| TORIANO A. LEAKS, JR. | ) | **SENTENCING MEMORANDUM** |
| | ) | |
| Defendant. | ) | |
| | ) | |

Now comes the Defendant, Toriano A. Leaks, Jr., by and through undersigned counsel, and respectfully requests this Honorable Court consider the attached Memorandum in passing final judgment.

Respectfully submitted,

*/s/ Roger M. Synenberg*
ROGER M. SYNENBERG (0032517)
Synenberg & Associates, LLC
55 Public Square, Suite 1331
Cleveland, Ohio 44113
(216) 622-2727
(216) 622-2707 (Fax)
lawoffice@synenberg.com

## CERTIFICATE OF SERVICE

I hereby certify that on December 30, 2019 a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular US mail. Parties may access this filing through the Court's system.

*/s/ Roger M. Synenberg*
ROGER M. SYNENBERG

## MEMORANDUM IN SUPPORT

### I. PRELIMINARY STATEMENT

This Sentencing Memorandum is presented to the Court to respectfully advance the reasons why a sentence of imprisonment on the low end of the guideline range is appropriate for Mr. Leaks in this matter.

Mr. Leaks understands and accepts responsibility for the seriousness of his conduct. Given the circumstances surrounding this case, which are set forth fully below, Mr. Leaks respectfully submits that a sentence of imprisonment on the low end of the guideline imprisonment range is sufficient but not greater than necessary to achieve the purposes of sentencing set forth in 18 U.S.C. § 3553(a).

### II. STATEMENT OF THE CASE

On or about April 10, 2019, Bedford Police initiated a traffic stop on a vehicle bearing two different license plates on the front and rear of the vehicle. The vehicle was operated by Defendant Toriano Leaks. Incident to arrest, Mr. Leaks' person was searched, as well as the vehicle itself. During the search of the vehicle, Bedford Police discovered a Glock handgun and three magazines underneath the front seat where the Defendant was sitting when the vehicle was stopped.

Upon observation of the Glock handgun, Bedford Police noticed an object affixed to the slide of the weapon. Due to the presence of this object, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) agents were contacted. ATF agents conducted a field examination of the firearm and determined that the object affixed to the firearm's slide was a "select fire auto-sear" which converts the semi-automatic Glock handgun into a fully automatic weapon.

After a short investigation in which ATF agents determined that Mr. Leaks was prohibited from possessing or owning a firearm due to his criminal history, Mr. Leaks was indicted on May 8, 2019 on two counts of Illegal Possession of a Machine Gun in violation of 18 U.S.C. § 992(o), 18 U.S.C. § 924(a)(2). On September 16, 2019, Mr. Leaks pled guilty to both counts in the indictment.

### III. PERSONAL HISTORY

Toriano Adaryll Leaks, Jr. was born on July 25, 1998 in Cleveland, Ohio to parents Toriano Leaks, Sr. and Riisha Burrell Leaks. Toriano was raised in the Kinsman neighborhood of Cleveland, Ohio. Toriano's mother and father both contributed to the family's needs and Toriano noted in his Pre-Sentence Investigation that his basic personal needs were always met.

During his childhood, Kinsman was a rough enough neighborhood to demand a strong police presence. It wasn't until his later childhood that Mr. Leaks grew comfortable traveling outside of his residence. At thirteen years old, Toriano was first exposed to marijuana use by others in his neighborhood and began using it himself. At sixteen years old, Toriano was grazed by three bullets and one of his friends was shot and sustained injuries. After attending high school classes through four different institutions,[1] Toriano discontinued his education in the 12th grade.

Prior to his arrest in the above-captioned case, Mr. Leaks was living with his grandmother in Garfield Heights, Ohio. Toriano's parents and grandmother are aware of the instant case and have remained highly supportive. Toriano has never been married and has not fathered any children; however, Toriano's first child, a daughter, had an expected due date of

---

[1] Toriano attended Regent High School in Cleveland, Ohio, the Horizon Science Academy in Cleveland, Ohio, Towpath Trail High School in Akron, Ohio, and participated in classes with The Electronic Classroom of Tomorrow (ECOT) based out of Columbus, Ohio.

December 22, 2019. This date was missed due to his incarceration. The mother of Toriano's child is Mr. Leaks' girlfriend and she has been in a relationship with Toriano for the past six years. Toriano's girlfriend has visited him during his incarceration and remains supportive as well.

During Mr. Leaks' incarceration, he has had the time to reflect upon his conduct and the circumstances that led to the instant case. Toriano has been participating in GED classes and has expressed an interest in gaining vocational skills by enrolling in a welding program. While Mr. Leaks does not consume alcohol or admit to the use of any illicit drugs other than marijuana, he noted that he would be open to substance abuse treatment if it became available to him. When asked if he would benefit from mental health treatment, Mr. Leaks responded in the affirmative.

Mr. Leaks' conduct has put him in the position to serve a period of incarceration for which he is accepting responsibility. It is apparent that he wishes to use this experience to correct his path in life.

IV. **LAW AND ARGUMENT**

A. **Current State of Sentencing Law in the Wake of *United States v. Booker* and its Progeny**

Sentencing procedure underwent a fundamental change with the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005). Whereas the Federal Sentencing Guidelines previously were virtually mandatory in nature, today they are "effectively advisory" in all cases. *Id.,* at 245. The net result is that district courts must now impose a sentence that is "sufficient but not greater than necessary" to achieve the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2). *See United States v. Foreman*, 436 F.3d 638, 644 n.1 (6th Cir. 2006) ("It is worth noting that a district court's job is not to impose a 'reasonable' sentence. Rather, a district court's mandate is to impose a 'sentence, sufficient, but not greater than necessary, to comply

with the purposes' of section 3553(a)(2)."); *see also United States v. Ranum*, 353 F. Supp.2d 984, 987 (E.D. Wis. 2005) ("[C]ourts are free to disagree, in individual cases and in the exercise of discretion, with the actual range proposed by the guidelines, so long as the ultimate sentence is reasonable and carefully supported by reasons tied to the § 3553(a) factors.").

The Supreme Court's directive that district courts are to impose sentences in light of ***all*** of the sentencing criteria set forth in § 3553 was made "pellucidly clear" in its decision in *Gall v. United States*, 128 S. Ct. 586 (2007).  In *Gall*, the Court rejected both "an appellate rule that requires 'extraordinary' circumstances to justify a sentence outside the Guidelines range" and "the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence."  *Id.* at 595. Instead, the Court established the following procedure that district courts are to follow when imposing sentence:

> [A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range.  As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark. The Guidelines are not the only consideration, however. Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party.  In so doing, he may not presume that the Guidelines range is reasonable.  He must make an individualized assessment based on the facts presented.  If he decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one. After settling on the appropriate sentence, he must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing.

*Id.* at 596-597 (citations and footnote omitted); *see also United States v. Grossman*, 513 F.3d 592, 596 (6th Cir. 2008) ("*Gall* shows that the sentencing process involves an exercise in judgment, not a mathematical proof").

Importantly, the "sufficient but not greater than necessary" standard of § 3553 test is no mere guideline. Rather, its sets an independent upper limit on the sentence that may be imposed by a Court. It is often referred to as the "parsimony provision." *See, e.g., United States v. Carey*, 368 F. Supp.2d 891, 895 n.4 (E.D. Wis. 2005); *United States v. Brown*, 356 F. Supp.2d 470, 479 (M.D. Pa. 2005).

As an initial matter, Mr. Leaks fully accepts responsibility for this offense. He is remorseful, contrite, and wants to contribute to society as a productive, law-abiding citizen. In light of Mr. Leaks' personal history and the offense conduct, it is apparent that a sentence of imprisonment on the low end of the guideline imprisonment range would be "sufficient but not greater than necessary."

**Application of the Statutory Sentencing Criteria**

### 1. The nature and circumstances of the offense and history and characteristics of the defendant.  (18 U.S.C. 3553 § (a)(1))

In *Pepper v. United States*, 131 S. Ct. 1229 (2011), the United States Supreme Court endorsed the notion that post-*Booker* sentencing must focus as much on the offender, his individual background, and his need for services and rehabilitation as on the offense committed. According to the Court, "highly relevant—if not essential—to [the] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics. Permitting sentencing courts to consider the widest possible breadth of information about a defendant ensures that the punishment will suit not merely the offense but the individual defendant." *Id.*, at 1240. (internal citations omitted) After the Guidelines were

made advisory, this conduct becomes even more important at sentencing.

Noted above, Mr. Leaks had a difficult upbringing in one of Cleveland's most crime-ridden neighborhoods. Exposed to drug use at age thirteen, involved in a shooting at age sixteen, and having discontinued his education in the 12th grade, Mr. Leaks was unwittingly destined to surround himself with criminal-minded individuals. During his period of incarceration, Mr. Leaks strengthened his familial bonds and has been motivated by the positive steps he is taking to become a productive member of society.

Mr. Leaks accepts responsibility for his conduct and is attempting to use this entire experience as an opportunity to turn his life around. It is respectfully submitted that a sentence on the low end of the guideline imprisonment range best reflects the appropriate sentence in light of Mr. Leaks' individual circumstances.

> **2. The need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence to criminal conduct; to protect the public from future crimes of the defendant; and to provide training, medical care or other correctional treatment. (18 U.S.C. 3553§ (a)(2)(A)-(D))**

When applying the above-referenced factors to the case at bar, it is apparent that a sentence on the low end of the guideline imprisonment range would sufficiently achieve the sentencing goals outlined in 18 U.S.C. § 3553(a). Mr. Leaks understands that he must serve a sentence in this case. He is determined to not allow this case and conduct to define the remainder of his life.

Mr. Leaks' PSR discloses that he has four criminal history points, corresponding to a Criminal History Category III (PSR ¶ 37). Recidivism is generally a concern under these circumstances. *See* United States Sentencing Commission, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines*, at 28 (May 2004) (Exhibit 9 showing

that recidivism rate for offenders ages 21-25 with a Criminal History Category III is 42.7% (available at http://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2004/200405_Recidivism_Criminal_History.pdf) (Last accessed December 16, 2019).

Mr. Leaks' potential recidivism can be differentiated from other offenders with similar criminal backgrounds. Mr. Leaks possesses a strong family support system as evidenced by his mother, father, grandmother, aunt, and girlfriend all visiting him while incarcerated. Mr. Leaks' family has also been present at various court proceedings throughout this case. It has been observed the changes that Mr. Leaks has been contemplating while incarcerated such as finishing his education, attending mental health counseling, and enrolling in vocational studies. He is also awaiting the birth of his first child. It is respectfully submitted that he does not carry the same risk of recidivism as other similarly classified individuals.

**The kinds of sentences available and Guideline range. (18 U.S.C. § 3553(a)(3)-(4))**

As set forth in *Rita vs. United States,* 551 U.S. 338, 351-52 (2007) and *Gall*, *supra*, a district court has discretion to impose a sentence at the low end of the Guidelines range so long as it considers the sentencing factors delineated in § 3553(a).

i.  <u>The applicable advisory Guidelines range.</u>

The total offense level for Mr. Leaks is seventeen (17) with a criminal history category of three (III). (PSR, ¶58) The applicable Guidelines calculation suggests thirty (30) to thirty seven (37) months of imprisonment and specifically notes that because the applicable Guideline range is in Zone D of the Sentencing Table, the Defendant is ineligible for probation. (*Id.,* PSR, ¶65)

The Pre-Sentence Investigation Report calculated Mr. Leaks' offense level as follows:

*Base Offense Level* **20**

| | |
|---|---:|
| Specific Offense Characteristics: | 0 |
| Victim Related Adjustment: | 0 |
| Adjustment for Role in the Offense: | 0 |
| Adjustment for Obstruction of Justice: | 0 |
| **Adjusted Offense Level (Subtotal):** | **20** |
| Chapter Four Enhancement: | 0 |
| Adjustment for Acceptance of Responsibility: | **-2** |
| Adjustment for Acceptance of Responsibility: | **-1** |
| **Total Offense Level** | **17** |

(PSR, ¶20-29)

A total offense level of seventeen (17) with a criminal history category III falls within Zone D. A sentence of imprisonment on the low end of the suggested Guidelines range would be most appropriate for Mr. Leaks in this case.

V.   **CONCLUSION**

For all the reasons set forth in this Memorandum, it is respectfully requested that this Honorable Court recognize the unique circumstances at bar regarding Mr. Leaks. Mr. Leaks deeply regrets his actions and accepts full responsibility for his conduct. Mr. Leaks respectfully requests that the Court sentence him to a term of imprisonment on the low end of the guideline imprisonment range.

Respectfully submitted,

*/s/ Roger M. Synenberg*
ROGER M. SYNENBERG (0032517)
Synenberg & Associates, LLC
55 Public Square, Suite 1331
Cleveland, Ohio 44113
(216) 622-2727
(216) 622-2707 (Fax)
lawoffice@synenberg.com